# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## DOCKET NO. 3:06-CR-430-FDW

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| vs. ) | |
| ) | **CERTIFICATION AND** |
| **JOSEPH DiBRUNO, SR.,** ) | **ORDER OF CONTEMPT** |
| ) | |
| **Defendant.** ) | |
| ) | |

Pursuant to Fed. R. Crim. P. 42(b) and 18 U.S.C. § 401, the undersigned United States District Judge certifies that:

1. Defendant Joseph DiBruno, Sr., personally appeared before me on 17 September 2007 for trial. The defendant, along with his son and co-defendant, Joseph DiBruno, Jr., reached linked plea agreements with the government prior to jury selection, and the proceeding was converted into a Rule 11 hearing. Defendant Joseph DiBruno, Sr., was placed under oath and testified as follows:

> THE COURT: [H]ave . . . you had a opportunity to read and discuss the Plea Agreement with your attorney before you signed it?
> MR. DiBRUNO, SR.: Yes, sir.
> * * *
> THE COURT: Are you pleading guilty today on your own free will because you're guilty?
> MR. DiBRUNO, SR.: Yes, sir.

Throughout the plea colloquy, defendant Joseph DiBruno, Sr., appeared to the Court to be fully cognitive, dispassionate and lucid, actively aware and intelligently participating in dialogue with the Court. For example, when at one point it was unclear to the Court and counsel if Mr. DiBruno, Sr., had answered a question, he spontaneously responded: "I understood the previous question. My answer was 'yes, sir.'" Likewise, Mr. DiBruno, Sr., engaged in extensive dialogue

with the Court concerning the medications that he was then taking and whether he was able to understand the nature and consequences of the proceeding.

2. On 9 January 2008, defendant Joseph DiBruno, Sr.'s court-appointed counsel, Lane Williamson, filed a perfunctory motion to withdraw the defendant's guilty plea, stating that "Defendant asserts that he is actually innocent of the charges to which he pled guilty and that the guilty plea was the product of undue duress."

3. On 15 September 2008, defendant Joseph DiBruno, Sr., filed a sworn affidavit in support of his motion to withdraw plea, stating that "[a]fter the plea hearing [on 17 September 2007], and before we left court that day, I told my counsel [Lane Williamson] that I wanted to withdraw my plea."

4. On 22-23 September 2008, defendant Joseph DiBruno, Sr., again personally appeared before me for hearing on the motion to withdraw plea. Again testifying under oath, the answers he provided were often internally inconsistent, contradictory to the other evidence received, and calculated to advance his own agenda without regard for the truth:

    a. At first Mr. DiBruno, Sr., maintained that he "just gave up," "didn't care," and answered the questions put to him at the Rule 11 colloquy in a "mechanical" fashion: "So I just answered them and said yes to everything they said. Half the time I was just nodding my head."[1] At one point he stated that he signed the plea agreement because he was "disgusted with the whole situation." Later he described his

---

[1] The Court's own recollection and the transcript from the Rule 11 hearing does not support this assertion. Mr. DiBruno, Sr., not only vocalized his answers to each of the Court's questions, but he also, as already indicated, paid keen attention and actively participated in the colloquy.

2

emotional state as "kind of upset," and then by the end of his testimony claimed to have been "in a very high emotional state that caused me physical and mental disturbances to where I did not realize or have full control of everything that I did." The defendant's drifting story, which was entirely incoherent and contradicted in the whole, contrasts starkly with the sophistication that the defendant displayed in answering each particular question in a way calculated to advance his interests and always giving the misimpression that he is the one who is misunderstood and not at fault for anything. For example, despite his claims that his free will had been overcome by emotion and that he "just gave up" on the morning he pleaded guilty, Mr. DiBruno, Sr., when pressed during cross-examination about the inconsistencies between his answers at the Rule 11 hearing and his story now, went on to rationalize with remarkable detail and clarity of mind how both sets of answers were in fact true at the moment they were given. Of particular note are a series of questions where, in the course of just a couple minutes, defendant: (i) testified that while answering the questions put to him in the Rule 11 colloquy, he was "emotionally unstable," "mentally upset," and "under an emotional condition that I did not have full control of my faculties;" (ii) admitted to telling the Court, under oath, that he felt clear, comfortable, and understood everything that was going on in the Rule 11 hearing; (iii) accused the prosecutor of "twisting the statement" (it had been made in reference to the Court's questioning about medications he was taking, although he did anything but answer the question "mechanically" and provided the Court with a detailed account of his medical history and repeated assurances that his understanding of what

3

he was doing in no way was impaired); and then (iv) immediately reverted to his story that he just answered the questions "mechanically" when asked if he had truthfully answered the question about whether he had been fully satisfied with the representation of his attorney.

b. In further support of his motion to withdraw plea, Mr. DiBruno, Sr., accused his attorney, Lane Williamson, of several ethical breaches and acts of malpractice. He testified that Mr. Williamson never explained the plea agreement to him before he signed it – in direct contradiction of his testimony during the Rule 11 colloquy. He also testified (as in his affidavit) that immediately following the Rule 11 hearing, and before leaving the courtroom that day, he told Mr. Williamson that he wanted to withdraw his plea.[2] This is contrary to the unimpeachable testimony of Mr. Williamson, who, as Chairman of the State Bar's Disciplinary Hearing Commission, has an especial respect for and understanding of the ethical duties of a criminal defense lawyer. Mr. Williamson testified in unequivocal terms that he did explain to Mr. DiBruno, Sr., the terms of the plea agreement, that his client did indicate a desire to accept the plea agreement, that at no time that day did his client ever say that he wanted to withdraw the plea, and that had any of those things actually

---

[2] During cross examination, Mr. DiBruno, Sr., at first balked and stated that he could not remember whether he just told Mr. Williamson that he was sorry that he entered the guilty plea or whether he actually wanted to withdraw it, but when confronted with his prior affidavit (made only a week prior to this hearing) stuck to the latter story. In any event, this testimony is either fabricated for the purpose of advancing the motion, or, even if true, actually undercuts Mr. DiBruno, Sr.'s other protestations of duress, given the close proximity in time between when the plea was taken and his sudden 'realization' after court that day that he had been 'coerced' into pleading (the entire Rule 11 hearing lasted less than 40 minutes).

4

occurred he would have been ethically bound to act on it that day.

    c.    Mr. DiBruno, Sr., repeatedly maintained his innocence of the charges, in contradiction of the answer he gave at the Rule 11 hearing that he was pleading guilty of his own free will because he was in fact guilty, and in the face of overwhelming evidence of guilt produced by the government during what became in effect a two-day mini-trial in rebuttal of the motion to withdraw plea.[3]

5.    The aforesaid conduct of defendant Joseph DiBruno, Sr., took place in the presence of and was seen and heard by the undersigned. The contemptuous character of the conduct was readily apparent to the undersigned in the context of an entire two-day court proceeding premised upon a complete fraud.

6.    The aforesaid conduct of defendant Joseph DiBruno, Sr., constitutes perjury, abuse of judicial process, and an attempt to perpetrate a fraud on the Court, for the purpose and with the effect of obstructing the administration of justice. Mr. DiBruno, Sr.'s motion to withdraw plea was utterly lacking in factual merit[4] and Mr. DiBruno, Sr., acting in bad faith, persisted in the prosecution of the motion despite its frivolity. Co-defendant Joseph DiBruno, Jr., recognized the lack of merit to his

---

[3] Specific acts of perjury going to the issue of Mr. DiBruno's guilt or innocence include denying that he had any business association with DiBruno Brothers Mining and denying that he had represented himself as having an involvement with the United Nations and the Knights of Malta, the falsity of which was amply demonstrated through the highly credible testimony of Cynthia Dimmette. However, the Court emphasizes for the record that it does not base its finding of contempt specifically or primarily on the defendant's perjury. In re Michael, 326 U.S. 224 (1945).

[4] The legal presentation of the motion by Mr. DiBruno, Sr.'s current attorney, David Burgess, was not made in bad faith given the misinformation supplied by his client. In fact, Mr. Burgess did exceptionally well zealously and ethically representing his client despite the misinformation provided him.

motion to withdraw his plea and withdrew his motion with prejudice. However, Mr. DiBruno, Sr.'s persistence in his frivolous assertion of innocence necessitated the holding of a two-day hearing on the motion to withdraw his plea that resulted in great inconvenience to the Court, and more importantly, to the victims who had come for this defendant's sentencing.

7. Mr. DiBruno, Sr., is in a poor state of health, and as he testified at the hearing, he expects that any sentence he receives in this matter to be in effect a life sentence for him. He was, however, out on bond pending sentencing due to his health situation. Mr. DiBruno, Sr., therefore had nothing to lose, and everything to gain, by gaming the judicial process in order to withdraw his plea, avoid his sentencing date, and proceed to trial. Having failed at the motion, Mr. DiBruno, Sr., still reaps the benefit of a very favorable plea agreement (with a five-year statutory cap on any sentence of imprisonment) in the event that he outlives his expectations. A finding of contempt and the imposition of punishment independent of the sentence imposed for the underlying offense is therefore necessary to vindicate this Court's authority.

8. The Court finds support in the case law for this action,[5] but it does not make this finding of contempt lightly or impetuously. The Court notes that it has heard numerous motions to withdraw a plea over its two years and three months on the bench, most of which were without merit but at least were made in good faith, and this is the first and only time the Court has felt that a finding of

---

[5] Cf. Thomas v. State, 210 So.2d 488, 490 (Fla. Dist. Ct. App. 1968) (noting in dictum that a finding of contempt would be appropriate in the case of a defendant who challenges his plea on the basis of duress and a hearing demonstrates a "complete lack of factual basis for any such charge of coercion"); Roberts v. State, 515 So.2d 434 (Fla. Dist. Ct. App. 1987) (affirming a finding of contempt where "[t]he evidence presented at the hearing on defendant's motion to vacate his plea . . . supports the findings of fact . . . that the defendant committed perjury in his testimony before the court either at the time he entered his plea or at the time he gave diametrically opposite testimony when he sought to withdraw it").

criminal contempt is not only appropriate but necessary.

9. The Court hereby incorporates the entire record of proceedings in this case.

In consideration thereof, it is ORDERED, ADJUDGED, and DECREED that defendant Joseph DiBruno, Sr., is in direct and summary criminal contempt of court, Fed. R. Crim. P. 42(b), and as a consequence shall be punished by a term of six months' imprisonment, to be served consecutive to any other sentence imposed by the Court in this case.

IT IS SO ORDERED.

Signed: September 26, 2008

Frank D. Whitney
United States District Judge